# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**RON GOOLSBY, et al.,**                           CASE NO. 3:19 CV 2664

     Plaintiffs,

     v.                                              JUDGE JAMES R. KNEPP II

**BEST IN NEIGHBORHOOD, LLC, et al.,**

     Defendants.                              **MEMORANDUM OPINION AND ORDER**


## INTRODUCTION

Plaintiffs Ron and Allyse Goolsby bring this action on behalf of their minor child against their landlords, Defendants Best in Neighborhood, LLC, Courtney Brown, and Keith Brown[1], alleging a violation of the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. § 4851 *et seq.*, and state law claims of negligence, negligence per se, loss of consortium, private nuisance, intentional infliction of emotional distress, negligent infliction of emotional distress, fraud, negligent misrepresentation, breach of contract, and unjust enrichment. (Doc. 1). The property's insurer, Auto-Owners (Mutual) Insurance Company, filed an Intervenor's Complaint, seeking declaratory judgment regarding whether it has a duty to defend or indemnify Defendants in response to Plaintiffs' claims. (Doc. 38). The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. Currently pending before the Court are two related motions: (1) Auto-Owners's Motion for Judgment on the Pleadings (Doc. 45) and (2) Auto-Owners's Motion to Certify Question to the Ohio Supreme Court (Doc. 52). Both motions are primarily directed at the same

---

1. Best Home, LLC and Brown CRE were also originally defendants to this case, but were previously dismissed without prejudice. *See* Doc. 16.

question – whether the at-issue insurance policy covers Plaintiffs' claims, and thus requires Auto-Owners to defend Defendants in this suit. Both are fully briefed and ripe for decision. For the reasons discussed below, the Court denies the Motion to Certify, and denies the Motion for Judgment on the Pleadings except as it relates to Auto-Owner's duty to defend Plaintiffs' breach of contract and unjust enrichment claims.

**BACKGROUND**

The facts relevant to the pending motions are not in dispute. In March 2017, Plaintiffs agreed to lease the home, for two years, at 540 Collins Street, Toledo, Ohio 43610 from Defendant Best in Neighborhood. (Doc. 1, at 9). In their Complaint, Plaintiffs assert their minor child suffered injuries as a result of lead-based paint at the property. *See generally* Doc. 1.

Best in Neighborhood was insured under a commercial general liability policy by Auto-Owners for the period April 24, 2017 through April 24, 2018. *See* Doc. 38, at 1; Doc. 38-1 (policy). That policy contains what is frequently referred to as an "absolute pollution exclusion". It provides, in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

   **1. Insuring agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. We may at our discretion investigate any claim or "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

2

> **(2)** Our right and duty to defend end when we have used up the applicable limit of Insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.
>
> * * *

**2. Exclusions**

This insurance does not apply to:

* * *

> **f. Pollution**
>
> **(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>
>> **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. * * *
>
> * * *

**SECTION V – DEFINITIONS**

* * *

**16.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

(Doc. 38-1, at 24-25, 37, 40).

**STANDARD OF REVIEW**

A motion for judgment on the pleadings under Federal Civil Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion. *Coley v. Lucas County*, 799 F.3d 530, 536–37 (6th Cir. 2015). When considering either a Rule 12(b)(6) or 12(c) motion, this Court presumes all well-pleaded material allegations of the pleadings are true and draws all reasonable inferences in the non-moving party's favor. *Total Benefits Planning Agency v. Anthem Blue Cross &*

3

*Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## DISCUSSION

At issue in both pending motions is whether Auto-Owners has a duty to defend Defendants pursuant to the at-issue insurance policy. Auto-Owners argues this Court should either (1) hold it does not have such a duty (Doc. 45), or (2) certify the following question to the Ohio Supreme Court:

> Does an absolute pollution exclusion contained within a standard commercial general liability coverage form operate to exclude coverage for claims of bodily injury resulting from exposure to lead-based paint?

(Doc. 52, at 1). Auto-Owners asserts claims regarding lead-based paint are specifically excluded from the at-issue policy under the pollution exclusion and thus it owes no duty to Defendants. Alternatively, Auto-Owners asserts this is an unsettled question of Ohio law that should be certified. Plaintiffs oppose certification (Doc. 53), and both Plaintiffs and Defendants oppose the motion for judgment on the pleadings (Docs. 59, 60). As to judgment on the pleadings, Plaintiffs and Defendants contend the pollution exclusion is either ambiguous as applied to lead-based paint claims or that lead paint is not a "pollutant" as defined by the policy; either way, they assert, Auto-Owners has a duty to defend. (Docs. 59, 60). Opposing certification, Plaintiffs contend the standard for certification is not satisfied, and even if it is, this Court should exercise its discretion to deny such a motion. (Doc. 53).

For the reasons discussed below, the Court denies Intervenor Auto-Owners's Motion to Certify (Doc. 52), and grants in part and denies in part Auto-Owners's Motion for Judgment on the Pleadings (Doc. 45).

4

Ohio Insurance Policy Interpretation

"[A]n insurance policy is a contract between an insured and the insurer." *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St. 3d 482, 487 (2006). The interpretation and construction of a written contract are questions of law. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241 (1978). "The purpose of contract construction is to discover and effectuate the intent of the parties. The intent of the parties is presumed to reside in the language they chose to use in their agreement." *Graham v. Drydock Coal Co.*, 76 Ohio St. 3d 311, 313 (1996). The Court is to "honor the plain meaning of the policy's language 'unless another meaning is clearly apparent from the contents of the policy.'" *Ohio N. Univ. v. Charles Constr. Servs., Inc.*, 155 Ohio St. 3d 197, 199 (2018) (quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St. 3d 216, 219 (2003)). "Where exceptions, qualifications or exemptions are introduced into an insurance contract, a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof." *Home Indemn. Co. of N.Y. v. Village of Plymouth*, 146 Ohio St. 96, ¶ 2 of syllabus (1945).

"Contract terms are generally to be given their ordinary meaning when the terms are clear on their face," and courts must "apply the plain language of the contract when the intent of the parties is evident from the clear and unambiguous language in a provision." *Coma Ins. Agency v. Safeco Ins. Co.*, 526 F. App'x 465, 468 (6th Cir. 2013) (citing, *inter alia*, *Karabin v. State Auto. Mut. Ins. Co.*, 10 Ohio St. 3d 163, 166-67 (1984)). Contract language is ambiguous "only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App. 3d 45, 55 (1998) (citing *Potti v. Duramed Pharm., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991)). "'The test to be applied is not what the insurer *intended* by his

words, but what the ordinary reader and purchaser *would have understood them to mean*.'" *Andersen v. Highland House Co.*, 93 Ohio St. 3d 547, 551 (2001) (quoting *Davis v. M.L.G. Corp*, 712 P.2d 985, 989 (Colo. 1986) (internal quotation omitted) (emphasis added in *Andersen*). "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *Lane v. Grange Mut. Cos.*, 45 Ohio St. 3d 63, 65 (1989).

<u>Insurer's Duty to Defend</u>

An insurer's "duty to defend is broader than and distinct from its duty to indemnify." *Ohio Gov't Risk Mgmt. Plan v. Harrison*, 115 Ohio St. 3d 241, 245 (2007). "The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage." *Id.* (citing *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St. 3d 177, 179 (1984)). This means "where the complaint brings the action within the coverage of the policy the insurer is required to make defense, regardless of the ultimate outcome of the action or its liability to the insured." *Motorists Mut. Ins. Co. v. Trainor*, 33 Ohio St. 2d 41, 41 (1973).

"However, an insurer need not defend any action or claims within the complaint when all the claims are clearly and indisputably outside the contracted coverage." *Id.* (citing *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St. 3d 108, 113 (1987)); *see also Beaverdam Contr. v. Erie Ins. Co.*, 2008-Ohio-4953, at ¶21 (Ohio Ct. App.) ("In such cases, there is no duty to defend because the allegations in the pleadings fall squarely within an area of activity specifically excluded from coverage.").

<u>Other Courts' Application of Pollution Exclusions to Lead-Based Paint</u>

As the parties' briefs evidence, courts around the country are split regarding whether lead-based paint claims are included in absolute pollution exclusions such as the one at issue here and thus precluded from coverage. *See* Claudia Catalano, Annotation, *What Constitutes "Pollutant," "Contaminant," "Irritant," or "Waste" Within Meaning of Absolute or Total Pollution Exclusion in Liability Insurance Policy*, 98 A.L.R. 5th 193, §§ 8[a]-8[c] (Originally published 2002).

On one side, courts finding lead-based paint claims are not included within the absolute pollution exclusion hold one or both of the following: (1) lead-based paint does not fall within the definition of "pollutants" in absolute pollution exclusions similar to the at-issue one (or at least not unambiguously so); and (2) even if lead paint falls within that definition, cracked, chipped, or peeling lead paint does not fall within the "discharge, disbursal, seepage, migration, release or escape" definition requirement of the exclusion. *See, e.g.*, *Ins. Co. of Ill. v. Stringfield*, 292 Ill. App. 3d 471, 475 (Ill. Ct. App. 1997) (finding it ambiguous whether lead paint fell within the definition of pollutant, specifically because "the term 'contaminant' is susceptible to more than one reasonable interpretation and thus ambiguous with respect to whether it encompasses lead-based paint"); *Danbury Ins. Co. v. Novella*, 727 A.2d 279, 283 (Conn. Super. Ct. 1998) (finding clause ambiguous because "it is equally reasonable to conclude that lead paint may or may not be an irritant or contaminant, and therefore may or may not be a pollutant", and because "a reasonable insured would interpret it to exclude coverage for claims arising out of factual circumstances more analogous to classic environmental pollution, but not for claims of personal injury allegedly sustained as a result of the type of paint covering the surfaces of rented premises."); *Lefrak Org., Inc. v. Chubb Custom Ins. Co.*, 942 F. Supp 949, 955-56 (S.D.N.Y.

1996) (finding whether lead paint can be characterized as a "pollutant" "open to dispute" because, by one interpretation lead can be thought of as "contaminat[ing] the body by injecting impurities into the blood stream", but by another – equally reasonable – interpretation, the list of examples ("smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste") suggest only "the products and byproducts associated with the operation of equipment or machinery", and "[l]ead paint is neither among the listed examples, nor closely related to a listed example"). Some of these interpretations come from courts that have – based on the history of the absolute pollution exclusion – limited it to "traditional environmental pollution". *See, e.g.*, *Am. States Ins. Co. v. Koloms*, 177 Ill. 2d 473, 493 (Ill. 1997); *Atlantic Mut. Ins. Co. v. McFadden*, 595 N.E.2d 762, 764 (Mass. 1992) ("The definition of 'pollutant' in the policy does not indicate that leaded materials fall within its scope. Rather, the terms used in the pollution exclusion, such as 'discharge,' dispersal,' 'release,' and 'escape,' are terms of art in environmental law which generally are used with reference to damage or injury caused by improper disposal or containment of hazardous waste.").

On the other side, courts holding that lead-based paint claims do fall within the absolute pollution exclusion come to the opposite conclusions – (1) lead paint is encompassed within the definition of "pollution" and (2) exposure to lead paint is necessarily the result of a "discharge, dispersal, spill, release, or escape" (or something similar). *See, e.g.*, *State Farm Fire & Cas. Co. v. Dantzler*, 289 Neb. 1, 14-17 (Neb. 2014) (any manner of exposure to lead-based paint involves a "discharge, dispersal, spill, release or escape"); *Kaytes v. Imperial Cas. & Indem. Co.*, 1994 WL 780901, at *1 (E.D. Pa.) (applying Pennsylvania law and conclusorily finding the exclusion "clear and facially unambiguous" because lead is a "chemical" that "irritates" and "contaminates"); *Peace v. Nw. Nat'l Ins. Co.*, 228 Wis. 2d 106, 125-27 (Wis. 1999) (finding

8

lead, lead paint, lead paint chips, lead paint fumes, and lead paint dust are an "irritant" or "contaminant" within the meaning of the exclusion and the words "discharge", "dispersal", "release" or "escape" "covers the release of paint containing lead from a wall or ceiling into the air or onto the floor" because these words "appear to describe the entire range of actions by which something moves from a contained condition to an uncontained condition.").

But this Court is not tasked with weighing the various reasoning in the above cases and determining which interpretation is "correct" in the abstract. Rather, the Court must predict how the Ohio Supreme Court would rule.

<u>Ohio Law Regarding Pollution Exclusions</u>

In the absence of direct guidance from Ohio's highest court, this Court must attempt to anticipate how that court would resolve the issue of whether lead-based paint falls within the policy exclusion language. *See Meyers v. Cincinnati Bd. of Ed.*, 983 F.3d 873, 880 (6th Cir. 2020). The Court is bound by controlling decisions of the Ohio Supreme Court, and intermediate state appellate court decisions are "viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005) (citation omitted).

Again, the provision at issue here excludes from coverage "[b]odily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants", where "pollutants" are defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. (Doc. 38-1, at 25, 40).

Neither the Ohio Supreme Court nor Ohio's appellate courts have addressed the precise claim at issue here – the application of an absolute pollution exclusion in a commercial general liability policy to a claim regarding lead-based paint. But Ohio courts have addressed similar exclusions in other contexts.

In 2001, the Ohio Supreme Court addressed the exclusion as applied to a claim regarding carbon monoxide from a malfunctioning residential gas heater. *Andersen v. Highland House Co.*, 93 Ohio St. 3d 547 (2001). Confronting a pollution exclusion identical to that at issue here, the *Andersen* court first noted the Ohio Supreme Court's prior holding that "where exceptions . . . are introduced into an insurance contract, a general presumption arises to the effect that that which is not *clearly excluded* from the operation of such contract is included in the operation thereof." *Id.* at 549 (quoting *Plymouth*, 146 Ohio St. 96, at ¶2 of syllabus) (emphasis in *Andersen*). It then held:

> In the case at bar, the policy in question never clearly excludes claims for deaths or injuries caused by residential carbon monoxide poisoning. It is not the responsibility of the insured to guess whether certain occurrences will or will not be covered based on nonspecific and generic words or phrases that could be construed in a variety of ways. Thus, in order to defeat coverage, "the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the only one that can fairly be placed on the language in question." Reiter, Strasser & Pohlman, The Pollution Exclusion Under Ohio Law: Staying The Course (1991), 59 U. Cin. L. Rev. 1165, 1179. See *Lane v. Grange Mut. Cos.* (1989), 45 Ohio St.3d 63, 65, 543 N.E.2d 488, 490 ("Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured").

*Id.* The *Andersen* court examined the history and purposes of the pollution exclusion and explained it "did not support the notion that if it was created to preclude the kind of claim involved in this case." *Id.* at 549. It thereafter explained:

> The court in *Am. States Ins. Co. v. Koloms* (1997), 177 Ill.2d 473, 492–493, 227 Ill.Dec. 149, 158, 687 N.E.2d 72, 81, best described the real purpose of the

pollution exclusion when it wrote: "Our review of the history of the pollution exclusion amply demonstrates that the predominate motivation in drafting an exclusion for pollution-related injuries was the avoidance of the 'enormous expense and exposure resulting from the "explosion" of *environmental* litigation.' (Emphasis added.) *Weaver* [*v. Royal Ins. Co. of Am.* (1996) ], 140 N.H. [780] at 783, 674 A.2d [975] at 977, quoting *Vantage Development Corp. v. American Environment Technologies Corp.,* 251 N.J.Super. 516, 525, 598 A.2d 948, 953 (1991). * * * We would be remiss * * * if we were to simply look to the bare words of the exclusion, ignore its *raison d'etre,* and apply it to situations which do not remotely resemble traditional environmental contamination."

*Id.* at 551-52. Later Ohio appellate decisions have applied this "traditional environmental contamination" view of the absolute pollution exclusion. *See, e.g.*, *Southside River-Rail Terminal v. Crum & Forster Underwriters of Ohio*, 157 Ohio App. 3d 325, 337 (Ohio Ct. App. 2004) (explaining that "the sudden escape of 990,000 gallons of liquid Uran 28 from a collapsed storage tank on an industrial site does equate to a traditional release of a pollutant into the environment."); *Bosserman Aviation Equip., Inc. v. United States Liab. Ins. Co.*, 183 Ohio App. 3d 29, 39 (Ohio Ct. App. 2009) ("[W]e find dispositive the Supreme Court of Ohio's discussion of the history of pollution-exclusion clauses and their intended purpose, namely, to preclude coverage for traditional environmental contamination"); *Rybacki v. Allstate Ins. Co.*, 2004-Ohio-2116, at ¶ 11 (Ohio Ct. App. 2004) ("The holding of *Andersen* is 'that carbon monoxide emitted from a malfunctioning residential heater is not a pollutant under the pollution exclusion of a comprehensive general liability policy unless specifically enumerated as such.' We think that the case of an internal heater emitting carbon monoxide within the atmosphere of residential living quarters does not equate to the environmental degradation of a pollutant leak into the earth.") (quoting *Andersen*, 93 Ohio St. 3d at 334); *see also JTO, Inc. v. Travelers Indem. Co. of Am.*, 242 F. Supp. 3d 599, 607 (N.D. Ohio 2017) (distinguishing *Andersen* because "there is no credible dispute that the underlying governmental Complaints against JTO are Complaints of 'traditional environmental contamination.'"); *but see Pure Tech Sys. v. Mt. Hawley Ins. Co.*, 95

11

F. App'x 132, 138 (6th Cir. 2004) (applying Ohio law and *Andersen* to polychlorinated biphenyls ("PCBs") in waste drums and explaining that "[t]he 'history' of the exclusion does not compel this court to disregard the plain language of the exclusion. . . . [and] the court is not at liberty to graft an additional term onto the exclusion based on the exclusion's history, especially a term as vague and potentially unworkable as 'traditional environmental contamination.'").

As Auto-Owners points out, several Ohio appellate courts previously concluded absolute pollution exclusions are "clear and unambiguous in precluding coverage for claims arising from pollution." *Selm v. Am. States Ins. Co.*, 2001 WL 1103509, at *3 (Ohio Ct. App.) (finding pollution exclusion unambiguous as to asbestos released when removing flooring); *Zell v. Aetna Cas. & Sur. Ins. Co.*, 114 Ohio App. 3d 677, 681-82 (Ohio Ct. App. 1996) (finding pollution exclusion unambiguous as to noxious fumes released when waterproofing materials were applied); *W. Am. Ins. Co. v. Hopkins*, 1994 WL 559005, at *1 (Ohio Ct. App.) (finding pollution exclusion unambiguous as to gasoline dumped down a floor drain).

But the above-cited cases pre-date *Andersen*, and a finding that a pollution exclusion is unambiguous (or ambiguous) in one context does not mean it is so in every context. *See, e.g.*, *Pure Tech Sys.*, 95 F. App'x at 137 ("The *Anderson* [sic] court held that a particular element of the exclusion—"pollutant"—was ambiguous *as applied to the facts at issue*—carbon monoxide emitted from a faulty heating unit.") (emphasis added). That is, saying an absolute pollution exclusion unambiguously precludes coverage for pollution simply begs the question of what falls within the definition of "pollution".

The Court finds *Andersen* instructive in multiple ways regarding the task at hand – "anticipat[ing] how the relevant state's highest court would rule in the case". *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005) (citation omitted). First, *Andersen* emphasized the need

12

for policy language regarding exclusions to be "clear[], specific[], and unambiguous[]", "the importance of interpreting ambiguities in insurance contracts against the insured", and explained "[i]t is not the responsibility of the insured to guess whether certain occurrences will or will not be covered based on nonspecific and generic words of phrases that could be construed in a variety of ways." 93 Ohio St. 3d at 548-49.

Given this guidance, the Court finds the definition of "pollution" in the policy as applied to lead-based paint "is susceptible of two or more reasonable interpretations", *United States Fid. & Guar. Co.*, 129 Ohio App. 3d at 55, and thus ambiguous. The Illinois appellate court in *Stringfield* examined the term – with its definition as an "irritant or contaminant", and cited the Seventh Circuit Opinion in *Pipefitters Welfare Educational Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037 (7th Cir.1992). There, the court cogently stated:

> The terms "irritant" and "contaminant," when viewed in isolation, are virtually boundless, for "there is virtually no substance or chemical in existence that would not irritate or damage some person or property." Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results.

*Pipefitters Welfare Educ. Fund*, 976 F.2d at 1043 (internal citation omitted). The *Stringfield* court then explained "the term 'contaminant' is susceptible to more than one reasonable interpretation and thus ambiguous with respect to whether it encompasses lead-based paint." 292 Ill. App. 3d at 475. Looking to dictionary definitions, the court found "[w]ith respect to whether such a definition encompasses the lead in the lead-based paint, a reasonably prudent layperson could conclude, based upon the definition alone, that it does not" because "[t]he definition implies that there must be a contemporaneous association between the contaminating substance and the time it corrupts the substance, no matter how toxic, dangerous, or undesirable it might later be determined to be" and it did "not believe that a reasonably prudent layperson would

13

understand that lead-based paint was contaminated from its time of creation" or "later contaminated since there was no subsequent corruption by lead". *Id. Stringfield* went on to explain:

> A common understanding of a pollutant is a substance that "pollutes" or renders impure a previously unpolluted object, as when chemical wastes leach into a clean water supply. Here the lead did not pollute the paint: it was purposefully incorporated into the paint from the start. The paint was intentionally applied to the premises. At the time, the paint was legal. It was considered neither impure nor unwanted. A literal reading of the term as it is used in the exclusionary clause at issue supports the interpretation favored by the defendants. We hold that, as a matter of law, the standard pollution exclusion found in general liability policies does not preclude coverage for personal injuries arising out of a minor's ingestion of lead.

*Id.* at 476. Therefore, the court concluded, "there is a reasonable interpretation of the pollution exclusion clause other than that it applies to claims for injuries arising out of the ingestion of lead-based paint—that the clause applies only to claims for injuries arising out of environmental pollution. Thus, the provision is ambiguous and the ambiguity is resolved in favor of the insured." *Id.* at 476-77; *see also McFadden*, 413 Mass. at 92 ("We conclude that an insured could reasonably have understood the provision at issue to exclude coverage for injury caused by certain forms of industrial pollution, but not coverage for injury allegedly caused by the presence of leaded materials in a private residence" in part because "[t]here simply is no language in the exclusion provision from which to infer that the provision was drafted with a view toward limiting liability for lead paint-related injury."); *Lefrak Org.*, 942 F. Supp. at 956 ("Lead paint is neither among the listed examples, nor closely related to a listed example", therefore policy exclusion is at least ambiguous).

To be sure, the definition of the term "pollutant" can also be read broadly to include claims related to lead-based paint as evidenced by the cases previously cited. But the Court finds both are equally reasonable interpretations of the definition of "pollution" in the policy as

14

applied to lead-based paint. And given the Ohio Supreme Court's strong emphasis in *Andersen* regarding the need for exclusions to be "clear[], specific[], and unambiguous[]", and that "[i]t is not the responsibility of the insured to guess whether certain occurrences will or will not be covered based on nonspecific and generic words of phrases that could be construed in a variety of ways", 93 Ohio St. 3d at 548-49, the Court finds a reasonable insured could read the policy and understood it to cover lead-based paint claims.

Second, in *Andersen*, the Ohio Supreme Court signaled (even though it did not explicitly hold), that it views the absolute pollution exclusion through its "traditional environmental pollution" history. 93 Ohio St. 3d at 334. Other state courts taking such an approach have found lead paint outside of such a definition. *See, e.g., Novella*, 727 A.2d at 283; *McFadden*, 595 N.E.2d at 764. Auto-Owners attempts to distance the instant case from much of Plaintiffs' and Defendants' cited caselaw, arguing these cases come from courts that have adopted such a view and "[n]either the Ohio Supreme Court, nor any of Ohio's appellate courts, have expressly found that standard pollution exclusion language applies *only* to 'traditional environmental' losses." (Doc. 62, at 6) (emphasis in original). This is true so far as it goes. But Ohio appellate courts post-dating *Andersen* have taken this "traditional environmental pollution" history as cited by *Andersen* into account. *See, e.g.*, *Southside River-Rail Terminal*, 157 Ohio App. 3d at 337; *Bosserman Aviation Equip.*, 183 Ohio App. 3d at 39. And the court's analysis in *Andersen* certainly suggests it views the exclusion through such a lens and is willing to graft that history onto the language of the exclusion. *See* 93 Ohio St. 3d at 551 ("We would be remiss if we were to simply look to the bare words of the exclusion, ignore its *raison d'etre*, and apply it to situations which do not remotely resemble traditional environmental contamination." (internal quotation and citation omitted).

15

Third and finally, the Court finds support for its conclusion in the many conflicting rulings cited by the parties regarding whether lead-based paint is included in such absolute pollution exclusions. That is, this wide-ranging conflict itself is – although not definitive – at least supportive persuasive evidence of the exclusion's ambiguity as applied to lead-based paint. As the Ohio Supreme Court explained in 1928:

> Without analyzing, or approving, or disapproving the logic of these several decisions or attempting to say where the weight of authority prevails, the fact that such respectable authority is in irreconcilable conflict, and was so long prior to the execution of the insurance contracts here under consideration, coupled with the fact that the lower courts in the instant case are in disagreement as to whether the clause is a covenant or a condition, presents such persuasive argument of the ambiguity of the clause that if this court were in accord as to the unambiguity of the clause it would hesitate to so declare.

*George H. Olmsted & Co. v. Metro. Life Ins. Co.*, 118 Ohio St. 421, 427–28 (1928); *see also Sullins v. Allstate Ins. Co.*, 340 Md. 503, 516-17 (1995) ("Some courts hold that the existence of conflicting judicial interpretations of insurance policy terms is evidence of ambiguity, while others hold such conflict is not conclusive.") (citing Charles C. Marvel, Annotation, 4 A.L.R. 4th 1253 (1981)); Williston on Contracts § 49:18 (4th ed.) ("This rule is based on the understanding that one cannot expect a lay person to understand the meaning of a clause where judicial minds are in disagreement."); *Cf. Fireman's Fund Ins. Cos. v. Ex-Cell-O Corp.*, 702 F. Supp. 1317 (E.D. Mich. 1988) ("Conflicting judicial interpretations may indeed be some evidence of ambiguity. But if the policies are unambiguous, conflicting judicial interpretations do not prevent [the court] from so finding.").

The Court finds the conflicting, reasonable, judicial interpretations of whether lead-based paint is a "pollutant" within the meaning of an absolute pollution exclusion in a commercial general liability insurance policy provide further support for finding the terms of the policy as applied here ambiguous.

In conclusion, for the reasons stated above, the Court believes the Ohio Supreme Court would find the absolute pollution exclusion in this case ambiguous as to the instant claims regarding lead-based paint. As ambiguities must be "construed strictly against the insurer and liberally in favor of the insured" *Lane*, 45 Ohio St. 3d at 65, Auto-Owners owes Defendants a duty to defend in the instant case.

Motion to Certify

Recognizing the above question is not a definitively settled question of Ohio law, Auto-Owners – four months after the filing of its Motion for Judgment on the Pleadings – filed a Motion to Certify "to afford this Court an alternative regarding the coverage issues raised in this matter." (Doc. 52, at 5).

Under Ohio Supreme Court Rule of Practice 9.01, "[t]he Supreme Court may answer a question of law certified to it by a court of the United States." Ohio S. Ct. Prac. R. 9.01(A). A federal court may certify an issue when a question of Ohio law may be determinative of the proceeding and there is no controlling precedent in the decisions of Ohio Supreme Court. *Id.* The "mere difficulty in ascertaining local law is no excuse" for the district court to certify a question. *Lehman Bros. v. Schein*, 416 U.S. 386, 390 (1974). Certification "is most appropriate when the question is new and state law is unsettled." *Transam. Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). However, "the federal courts generally will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (internal quotation and citation omitted). Ultimately, the decision to certify a question to a state supreme court "rests in the sound discretion of the federal court." *Lehman Bros.*, 416 U.S. at 391.

For the reasons stated above, the Court sees a "reasonably clear and principled course", *Pennington*, 553 F.3d at 450, in the instant case based on Ohio precedent and therefore exercises its discretion not to certify this question to the Ohio Supreme Court.

Breach of Contract / Unjust Enrichment Claims

Finally, Auto-Owners asserts (and no other party disputes) Plaintiffs' claims for breach of contract and unjust enrichment (Doc. 1, at 25-29) do not fall within the policy's coverage because they are not claims for "bodily injury" or "property damage" as defined therein. *See* Doc. 38-1, at 37 (defining bodily injury to mean "bodily injury, bodily sickness, or bodily disease sustained by a person, including death resulting from any of these at any time" and defining "property damage" to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured"). As such, Auto-Owners is under no duty to defend these claims.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Auto-Owners's Motion for Judgment on the Pleadings (Doc. 45), be and the same hereby is, GRANTED in part and DENIED in part as described herein; and it is

FURTHER ORDERED that Auto-Owners's Motion to Certify Question to the Ohio Supreme Court (Doc. 52), be and the same hereby is DENIED.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

18