IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **RON GOOLSBY, et al.,** | CASE NO. 3:19 CV 2664 |
| Plaintiffs, | |
| v. | JUDGE JAMES R. KNEPP II |
| **BEST IN NEIGHBORHOOD LLC, et al.,** | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

### INTRODUCTION

Pending before the Court is the motion for summary judgment filed by Defendants Courtney Brown and Keith Brown ("the Browns"). (Doc. 73). The motion is fully briefed and ripe for decision. (Docs. 84, 88). For the following reasons, the Court grants summary judgment in favor of the Browns.

### BACKGROUND

Plaintiffs Ron and Allyse Goolsby, on behalf of minor K.S.G. ("the Goolsbys"), bring claims for alleged lead exposure against Defendant Best in Neighborhood LLC ("BIN"), and its sole members, the Browns. (Doc. 73, at 1).

BIN is the title owner of a residence at 540 Collins and rents the space to tenants. *Id.* at 3. The Browns are the sole members of BIN. *See* Courtney Brown Depo., Doc. 75, at 6; Keith Brown Depo., Doc. 76, at 8. Both Browns also have interests in other property management companies. *See* Courtney Brown Depo., Doc. 75, at 8-9; Keith Brown Depo., Doc. 76, at 12.

**STANDARD OF REVIEW**

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

**DISCUSSION**

The Browns filed a motion for summary judgment, arguing they, as shareholders, cannot be held personally liable for any wrongs BIN may have committed. (Doc. 73, at 1). Plaintiffs argue the Browns's conduct makes them personally liable despite the corporate ownership of the relevant property. (Doc. 84, at 4). Specifically, Plaintiffs argue Ohio law permits piercing the corporate veil to hold the Browns personally liable, and that relevant federal statutory law independently permits

2

the Court to hold the Browns personally liable. For the following reasons, the Court finds summary judgment is appropriate.

Piercing the Corporate Veil

A fundamental rule of corporate law is that shareholders are generally not liable for the debts of the corporation. *Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos.*, 67 Ohio St. 3d 274, 287 (1993)[1]. Without privity of contract, there is no recourse against private owners of a corporate form. Yet, "an exception to this rule was developed in equity to protect creditors of a corporation from shareholders who use the corporate entity for criminal or fraudulent purposes." *Id*. This exception, piercing the corporate veil, "is considered a rare exception, with limited liability for shareholders being the rule." *Premier Therapy, LLC v. Childs*, 75 N.E.3d 692, 710 (Ohio Ct. App. 2016) (citing *Dombroski v. WellPoint, Inc.*, 119 Ohio St. 3d 506 (2008).

It is a legal fiction that corporations are "a personal entity, separate from the natural persons who compose it." *State ex rel. Atty. Gen. v. Standard Oil Co.*, 30 N.E. 279, 287 (1892). The Ohio Supreme Court noted that functionally "the corporate form has been introduced for the convenience of the company in making contracts, in suing and being sued, and to preserve the limited liability of the stockholders, by distinguishing between the corporate debts and property of the company, and of the stockholders in their capacity as individuals." *Id*. As to whether to pierce the veil:

> The metaphysical entity has no thought or will of its own; that every act ascribed to it, emanates from and is the act of the individuals personated by it; and that it can no more do an act, or refrain from doing it, contrary to the will of these natural persons, than a house could be said to act independently of the will of its owner; and, where an act is ascribed to it, it must be understood to be the act of the persons

---

1. To be sure, corporate law applies to limited liability companies because "a limited liability company has even been described as an example of a 'corporate entity' . . . a limited liability company is a legal fiction, as is a corporation.'" *Premier Therapy*, 75 N.E.3d at 712.

associated as a corporation, and whether done in their capacity as corporators or as individuals, must be determined by the nature and tendency of the act.

*Std. Oil Co.*, 49 Ohio St. at 184. Stockholders have a dual capacity of personal and business interests and can choose to benefit either; this warrants "judicial inquiry on the subject [because] fraud would enjoy an immunity awarded to it in no other." *Id*.

Ohio law uses a three-factor test to determine when courts may pierce the corporate veil:

(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own,

(2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and

(3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere*, 67 Ohio St. 3d at 289. The test seeks to find "balance between the principle of limited shareholder liability and the reality that the corporate fiction is sometimes used by the shareholders to protect themselves from liability for their own misdeeds." *Id.* Proof of all three elements is required to pierce the corporate veil. *Dombroski*, 119 Ohio St. 3d at 511.

The first element is also known as the alter ego doctrine; to succeed a plaintiff must show the individual and the corporation are fundamentally indistinguishable. *Belvedere*, 67 Ohio St. 3d at 288. Both the first and third elements are "fairly obvious, but necessary, preconditions to recovery under the alter ego doctrine." *Id.* at 289. A non-exhaustive list of factors used to determine if this standard has been met include:

(1) inadequate capitalization;

(2) insolvency at the time of the disputed act;

(3) the individual held himself out as personally liable for certain corporate obligations;

4

(4) siphoning of funds or assets of the entity for personal expenditures or use;

(5) the entity's inability to pay debts due to high salaries or loans to shareholders;

(6) commingling of individual and entity funds;

(7) disregard of corporate roles;

(8) disregard of corporate formalities;

(9) lack of corporate records, especially regarding claimed loans to or from the entity to be pierced;

(10) common office space;

(11) personnel; and

(12) the degree of domination by the person to be held liable, e.g. where the corporation was a mere facade for the operations of the dominant shareholders.

*Premier Therapy*, 75 N.E.3d at 716.

Only extreme disregard of corporate formalities has traditionally led courts to pierce the corporate veil. In *Denny v. Breawick LLC,* the sole member of the defendant LLC was found to be indistinguishable from said LLC when the member used the same bank account "to pay for his personal expenses", such as "lunches at various restaurants" and corporate expenses alike because he "did not have a separate bank account." 137 N.E.3d 578, 585 (Ohio Ct. App. 2019). There was no evidence to indicate the sole member kept corporate records and "could not identify when or if meeting minutes took place." *Id.* at 586. In sum, extreme disregard of corporate formalities led the court to the extreme remedy of piercing the corporate veil.

In *Pottschmidt v. Klosterman,* the sole shareholder of two corporate entities was using signage and letterhead in his own name. 169 Ohio App. 3d 824, 829 (Ohio Ct. App. 2006). There was also concrete evidence showing that "the funds of each corporation and of [the shareholder] were commingled." *Id.* at 837. The sole shareholder purchased an automobile with "personal funds

5

while titling the vehicle in the name of the original corporation and directing the original corporation to make the car payments and allocate the amount of the payments as income to" himself. *Id*. The name used for loan documents, rental agreements, and payments for equipment alternated between the individual and the corporate entity. *Id*. Additionally, one of the two corporations in question in *Pottschmidt* was created in an effort by the single shareholder to avoid liability of payment to an employee. *Id*. All of these facts inexorably tied the individual and corporation together as one entity.

In *Belvedere*, the court held that the plaintiffs did not introduce sufficient evidence to prove that the individual stockholder of the corporation used his control over the corporation in such a manner as to defraud the plaintiffs. *Belvedere*, 67 Ohio St. 3d at 290 (no evidence stockholder "personally, used his influence to defraud or injure" the plaintiffs). Thus, the court found there was insufficient evidence to pierce the veil. *See id.* ("The evidence cited by the court of appeals below clearly shows that Roark did exercise control over RERC, but mere control over a corporation is not in itself a sufficient basis for shareholder liability.").

In the case at hand, Plaintiffs claim that there is significant evidence of corporate informality, citing the fact that BIN has no dedicated office space and often performs its "administrative side" in the Browns's personal residence. *See* Keith Brown Dep., Doc. 76, at 8-9. Additionally, Plaintiffs point out that the Browns are uncertain as to whether their interactions with the health department and city regulators are conducted through their post office box, through their residential address, or both. *Id*. at 13-14; Courtney Brown Depo., Doc. 75, at 14. Lastly, Keith Brown was the sole individual with whom the Goolsbys interacted during negotiations, applications and paperwork, and entering the lease; he signed his own name on the lease and lead disclosure form. *Id*. Yet, the Court finds these facts are not unusual for an LLC of BIN's size. *Id*.

6

BIN has a separate mailing address from the Browns's personal residence and there is no evidence of commingling of funds or other overlaps. (Courtney Brown Dep., Doc. 75, at 17). The rental checks are mailed to BIN's post office box. *Id*. They do not use any of the business entities as substitutes for their personal interests and they keep all business functioning separate from each other and their personal ownership of property. (Ex. A., Courtney Brown Aff., Doc. 78 at ¶ 16).

To pierce the veil, the LLC and its shareholders must be indistinguishable from one another as each prong of the *Belvedere* element test is mandatory. The only evidence to suggest indistinguishability is the fact that the Browns conducted business in their home as opposed to a designated office; that Keith Brown used his name in the signature; and that correspondence with city regulators may have come to the Browns's personal residence on occasion. But, the address of the LLC was separate from the Browns's personal address and BIN is listed on the lease for 540 Collins. The burden is on Plaintiffs to show that the Browns and BIN are indistinguishable. Ohio law supports piercing the corporate veil only in extreme circumstances. The sort of extreme circumstances necessary are not present here. Nor have Plaintiffs presented evidence to prove indistinguishability. As such, Plaintiffs' have not created a genuine issue of material fact regarding the first prong necessary to establish personal liability.

42 U.S.C. § 4852d

The Residential Lead-Based Paint Hazard Reduction Act governs the disclosure of lead in "target housing". 42 U.S.C. § 4852d. The statute provides that the Environmental Protection Agency ("EPA") shall promulgate regulations obligating lessors or sellers to provide buyers and lessees with lead information pamphlets, disclose the presence of any known lead-based hazards, and to permit purchasers a ten-day period to conduct a risk assessment for the presence of lead-

based hazards. *Id.* The statute designates penalties for "any person" violating the statute, including monetary penalties, equitable enforcement by the EPA, and civil liability. *Id.*

The EPA in turn formed rules describing the scope and enforcement provisions of § 4852d under 40 C.F.R. § 745.100, *et seq*. Therein, the regulations reiterate the requirements of disclosure by sellers and lessors (40 C.F.R. § 745.100), describe the scope as applicable to "target housing" (§ 745.101), provides definitions (§ 745.103), establishes the responsibilities of agents (§ 745.115), and mirrors the statutory language regarding enforcement against "any person" who fails to comply (§ 745.118).

Plaintiffs argue § 4852d provides a cause of action against Defendants Courtney Brown and Keith Brown in their "individual capacities" based on the "broad class of defendants against whom claims may be brought", referencing the "any person" language contained in the enforcement provisions of § 4852d. (Doc. 84, at 4-5). Plaintiffs rely on the reasoning in *Caplan v. Weis*, wherein the Northern District of Georgia held that "[t]he statute does not limit liability to the seller or lessor. Furthermore, the statute states that defendants will be 'jointly and severally liable,' suggesting that individuals beyond the legal seller or lessor could be liable." 2015 WL 630441, at *4 (N.D. Ga. 2015) (discussing 42 U.S.C. § 4852d) (internal citations omitted). *Caplan* also relied on the broad enforcement clause – "[a]ny person who knowingly violates" – to interpret the statute to reach those beyond the lessor and seller. *Id.*

This Court is not persuaded by the holding in *Caplan*. In reviewing questions of statutory interpretation, the Sixth Circuit employs a three-step framework:

> [F]irst, a natural reading of the full text; second, the common-law meaning of the statutory terms; and finally, consideration of the statutory and legislative history for guidance. The natural reading of the full text requires that we examine the statute for its plain meaning, including the language and design of the statute as a whole. If the statutory language is not clear, we may examine the relevant legislative history.

8

*Hughes v. McCarthy*, 734 F.3d 473, 478 (6th Cir. 2013) (quoting *Elgharib v. Napolitano*, 600 F.3d 597, 601 (6th Cir. 2010)). Here, the plain meaning of the statute is evident – sellers and lessors must comply with the disclosure and warning requirements listed in § 4852d and the accompanying regulations. Additionally, and in accordance with the mandatory language of the statute, the EPA formulated regulations narrowly expanding this plain meaning to agents of sellers and lessors. 40 C.F.R. § 745.115; *see also Ayres v. United States*, 67 Fed. Cl. 776, 781 (2005) (recognizing the statute applies to the agents of buyers and sellers). Regulations define an "agent" as follows: "Agent means any party who enters into a contract with a seller or lessor, including any party who enters into a contract with a representative of the seller or lessor, for the purpose of selling or leasing target housing." 40 C.F.R. § 745.103.

A plain and natural reading of § 4852d shows Congress and the EPA intended to set standards for seller, lessors, and agents of target property. In section (b) of the statute ("enforcement provision") Congress contemplates the penalties and remedies that can be assessed against "[a]ny person who knowingly violates the provisions". § 4852d(b)(3). Plaintiffs and the *Caplan* court mistakenly interpret the broad language of the enforcement provision separate and apart from the scope of that provision, which specifically refers to lessors and sellers. § 4852d. Because individuals other than lessors, sellers, and their agents are not contemplated in the scope of § 4852d, they are not within the designation of "any person" who could violate the provision. *Caplan*'s analysis regarding the "joint and several" language is similarly mistaken. A plain reading of the statute clearly suggests that "any" and all sellers, lessors, or their agents could be held jointly and severally liable; joint and several liability does not suggest a broad and undefined expansion to the scope of the statute.

9

The parties agree that Best in Neighborhood owns and holds title to the property at issue in this case. (Doc. 84, at 2). A reasonable jury could not find that Keith and Courtney Brown were the lessors. *Id*. Managing properties on behalf of a Limited Liability Company is not sufficient to attach liability under the plain and natural reading of § 4852d. There is no evidence in the record that the Browns "enter[ed] into a contract with [Best in Neighborhood] . . . for the purpose of selling or leasing target housing." 40 C.F.R. § 745.103. Because Defendants Keith and Courtney Brown are outside of the scope of § 4852d, they cannot violate it. For this reason, summary judgment in favor Defendants Courtney and Keith Brown is proper.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that the Browns's Motion for Summary Judgment (Doc. 73) be, and the same hereby is, GRANTED.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE