# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**RON GOOLSBY, et al.,**　　　　　　　　　　　CASE NO. 3:19 CV 2664

　　　Plaintiffs,

　　　v.　　　　　　　　　　　　　　　　　　JUDGE JAMES R. KNEPP II

**BEST IN NEIGHBORHOOD LLC,**
　　　　　　　　　　　　　　　　　　　　　　**MEMORANDUM OPINION AND**
　　　Defendant.　　　　　　　　　　　　　　**ORDER**

### INTRODUCTION

Plaintiffs Ron Goolsby, Allyse Goolsby, and minor K.S.G. filed suit against Defendant Best in Neighborhood LLC ("Defendant")[1] alleging violations of the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. § 4852d, negligence per se based on Ohio Revised Code § 5321.04, and common law claims of negligence, loss of consortium, private nuisance, intentional infliction of emotional distress, negligent infliction of emotional distress, fraud, negligent misrepresentation, unjust enrichment, and breach of contract. *See* Doc. 1. Now before the Court is Defendant's Motion for Summary Judgment (Doc. 97). Plaintiffs opposed (Doc. 98), and Defendant replied (Doc. 99).

For the reasons set forth below, Defendant's Motion (Doc. 97) is granted in part and denied in part.

---

1. Plaintiffs also asserted claims against Keith Brown, Courtney Brown, Brown CRE LLC, and Best Home LLC. The claims against Brown CRE LLC and Best Home LLC were dismissed without prejudice. (Doc. 16). This Court granted summary judgment in favor of Keith and Courtney Brown. (Doc. 95). Best in Neighborhood LLC is the lone Defendant remaining in this case.

**BACKGROUND**

Viewing the facts in the light most favorable to Plaintiffs, the background of this case is as follows.

This suit arises out of claims K.S.G. suffered injuries resulting from exposure to lead paint in the home his parents rented from Defendant. Plaintiffs Ron Goolsby and Allyse Goolsby lived together with their two sons and Allyse's two daughters in a four-bedroom condo in Toledo. (Allyse Goolsby Depo., at 6-7, 14)[2]. Their youngest son, K.S.G., is a named Plaintiff in this action. (Doc. 1). K.S.G. was one year old when the events underlying this action arose. (Allyse Goolsby Depo., at 58). In 2016, Plaintiffs were looking to move into a larger home with a back yard near Allyse's mother. *Id.* at 17.

In December 2016, Allyse spoke with Keith Brown about the availability of a home he owned at 540 Collins Street in Toledo. *Id.* He informed her the house needed work and he would keep her updated on the progress. *Id.* In January 2017, Keith Brown stated he was having trouble finding workers to repair the property. *Id.* at 19. During their next meeting the parties walked through the house together. *Id.* at 20-21. Allyse recalled the house was a "fixer-upper". *Id.*

Rental Agreement

The parties entered a rental agreement and verbally discussed an option to purchase. *Id.* at 23-24. They agreed Plaintiffs would keep receipts for repairs on the home during the rental period and the amount would be offset against rent or an eventual purchase price. *Id.* at 25. On February 26, 2017, Plaintiffs submitted a rental application. *Id.* at 32. The rental agreement was set to be effective beginning March 31, 2017. *Id.* at 33. Defendant Best in Neighborhood LLC

---

2. Plaintiff Allyse Goolsby's deposition transcript is located at ECF Doc. 82-1.

was listed as the landlord of the property. *Id.* Keith and Courtney Brown are the only members of the LLC. (Doc. 76, at 8).

Prior to moving in, Plaintiffs cleaned the house and prepared it for move-in in exchange for a reduction of rent from Defendant. *Id.* at 35. Plaintiffs performed repairs to the kitchen cabinets, floor tiles, and painted the interior. *Id.* at 36-37. The Goolsby family moved into the house in April or May of 2017. *Id.* at 38. Alongside the lease agreement, Keith Brown supplied Plaintiffs with the "Protect Your Family from Lead in Your Home" educational pamphlet. *Id.* at 41. The pamphlet included an acknowledgement form; checkboxes on the form in spaces for disclosing the existence or absence of lead paint in the home remained blank, but both parties signed the form indicating Defendant gave the educational pamphlet to Plaintiffs. (Doc. 98-1). Plaintiffs testified Defendant did not provide any other documents pertaining to lead in the home, including any home inspection report from 2009. (Allyse Goolsby Depo., at 44); *see also* Ron Goolsby Depo., at 20-22[3]. Keith Brown testified Plaintiffs were aware of the presence of lead paint in the home. (Doc. 76, at 57). An unsigned internet blog dated May 3, 2017, describes an interview with Allyse Goolsby during which she was purportedly unaware of any notice to vacate due to lead contamination. (Doc. 97, at 12).

Plaintiffs denied having knowledge of the lead paint in the home until after their family friend, city health department employee Vaughan Jackson, notified them the house was under orders by the health department not to be occupied. (Allyse Goolsby Depo., at 52-56); (Ron Goolsby Depo., at 34). The whole family was living in the home at the time they learned of the lead paint. (Allyse Goolsby Depo., at 54).

---

3. Plaintiff Ron Goolsby's deposition transcript is located at ECF Doc. 82-2.

K.S.G. Diagnosis

At the time Allyse and Ron learned of the lead paint, both had observed developmental regression in their son, K.S.G. *Id.* at 57-58. In September 2017, about a month after noticing the onset of symptoms, K.S.G. underwent tests which revealed high levels of lead in his blood. *Id.* at 59-61, 73-76. K.S.G. suffered from communication issues including the loss of his ability to talk except through limited sign language. (Ron Goolsby Depo., at 76). He also forgot his own name, had unexplained outbursts in public, and could no longer spell. *Id.* at 77. K.S.G. was diagnosed with autism and attention deficit hyperactivity disorder ("ADHD"), and doctors told Plaintiffs the autism diagnosis is a result of lead poisoning. (Allyse Goolsby Depo., at 76-77); (Doc. 97, at 21). K.S.G. is currently enrolled at Hopebridge Autism Therapy Center and has an IEP through his preschool. (Allyse Goolsby Depo., at 11).

Allyse and the children vacated the house shortly after they were informed about the lead paint. *Id.* at 55. Ron stayed at the house and paid rent through March 2018 and did not officially vacate the property until June 2019 when Defendant initiated an eviction action. (Doc. 78, at ¶ 15); (*see also* Ron Goolsby Depo., at 60). Plaintiffs maintain the parties came to an agreement regarding non-payment of rent while the option to purchase was being discussed and after the lead paint issues arose. (Ron Goolsby Depo., at 59). In all, Plaintiffs spent approximately $20,000 on house repairs. *Id.* at 57.

Inspection Reports

In 2009, shortly after Defendant purchased the 540 Collins Street house, the City of Toledo Neighborhoods Department conducted an inspection. (Doc. 76, at 35). The city informed Keith Brown the inspection was necessary because a child living in the home had elevated levels of lead. *Id.* The 2009 inspection report identified areas of concern for lead-based paint. *Id.* at 38.

In 2015, the City of Toledo Health Department conducted a lead-based paint risk assessment of the home. *Id.* at 46. Keith Brown testified neither he nor his wife became aware of the 2015 risk assessment report until May 2017. *Id.* The Browns had moved to a new address prior to the time the risk assessment was mailed and state it was sent to an old address. *Id.* at 47. The risk assessment identified dozens of lead hazards throughout the home and ordered remediation within 90 days. (Doc. 98-2).

Neither the 2009 nor 2015 inspection reports were disclosed to Plaintiffs at the time the family moved into the home in 2017. (Allyse Goolsby Depo., at 44); (Ron Goolsby Depo., at 20-22).

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon

5

which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## DISCUSSION

Plaintiffs bring eleven claims against Defendant Best in Neighborhood LLC: (1) Failure to Disclose under the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. § 4852d; (2) negligence per se under Ohio Revised Code § 5321.04; (3) negligence; (4) loss of consortium; (5) private nuisance; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; (8) fraud; (9) negligent misrepresentation; (10) unjust enrichment; and (11) breach of contract. Defendant moves for summary judgment on all of Plaintiffs' claims. For the following reasons, Defendant's motion is granted on Plaintiffs' claims of intentional infliction of emotional distress and negligent infliction of emotional distress, granted in part as to negligence, and denied on all other claims.

Federal Claim

Plaintiffs argue Defendant unlawfully failed to provide the 2009 inspection report and the 2015 lead hazard report, and omitted critical information pertaining to known lead hazards prior to the execution of the lease agreement in violation of 42 U.S.C. § 4852d.[4] (Doc. 99, at 3-7). Defendant rebuts by stating Plaintiffs had notice of the presence of lead-based paint and voluntarily assumed the risk. (Doc. 97, at 7-8). In relevant part, § 4852d places the following obligations on sellers and lessors of target housing:

> (A) provide the purchaser or lessee with a lead hazard information pamphlet, as prescribed by the Administrator of the Environmental Protection Agency under section 406 of the Toxic Substances Control Act [15 USCS § 2686];

---

4. Plaintiffs concede that only Ron and Allyse Goolsby may assert claims under § 4852d. Insofar as the Complaint asserts claims on behalf of K.S.G. under § 4852d, the Court deems those claims abandoned.

> (B) disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide to the purchaser or lessee any lead hazard evaluation report available to the seller or lessor; and
>
> (C) permit the purchaser a 10-day period (unless the parties mutually agree upon a different period of time) to conduct a risk assessment or inspection for the presence of lead-based paint hazards.

*Id.* Defendant's reliance on the blog post (Doc. 97, at 12), the partially completed disclosure of information form (Doc. 98-1), and generalized testimony suggesting Plaintiffs were aware of the presence of lead paint (Doc. 76, at 57) is insufficient to satisfy the statutory requirements of § 4852d.

The Court first notes that neither the blog post nor the partially completed disclosure support Defendant's position that there is no genuine dispute Plaintiffs were on notice of lead-paint within the home; the blog post states Allyse was unaware of any notice to vacate on May 3, 2017, and the disclosure form does not list any documents or reports Defendant furnished to Plaintiffs. More importantly, § 4852d requires lessors to "provide to the purchaser or lessee any lead hazard evaluation report available to the seller or lessor". Here, both Allyse and Ron Goolsby testified they never received the 2009 inspection report that Keith Brown had available to him. (Allyse Goolsby Depo., at 44); (Ron Goolsby Depo., at 20-22). The 2009 report identified specific areas of concern for lead paint in the home. (Doc. 76, at 35). Defendant, contrary to representations in its brief, has not produced any evidence stating the 2009 inspection report was disclosed to Plaintiffs. (Doc. 97, at 3). Because § 4852d requires lessors to provide "any lead hazard evaluation report available", and Plaintiffs have produced evidence to raise a

7

genuine issue of material fact as to whether the 2009 inspection report was provided, Defendant is not entitled to summary judgment on this claim.[5]

Negligence

Plaintiffs argue Defendant's failure to disclose known lead hazards was negligent. (Doc. 1, at ¶¶ 100-07). Plaintiffs assert K.S.G. suffers from elevated blood lead levels, physical pain, delayed development, and permanent impairment to cognitive function as a result of Defendant's negligence. *Id.* at ¶ 106. Plaintiffs further assert Allyse and Ron Goolsby have endured loss of wages, medical expenses, emotional distress, loss of consortium, and loss of normal enjoyment of life as a result of K.S.G.'s high blood-lead levels. *Id.* at ¶ 107.

Defendant argues Plaintiffs' negligence claim must be dismissed because Ohio statute prohibits Plaintiffs' only expert, nurse Marilynne R. Wood, Ph.D., MSN, RN, from testifying on the issue of medical causation. (Doc. 97, at 9). Because Plaintiffs have presented no admissible evidence on the issue of causation, Defendant argues, the negligence claim necessarily fails. *Id.*

To establish a negligence claim in Ohio, "the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom." *Armstrong v. Best Buy Co.*, 788 N.E.2d 1088, 1090 (Ohio 2003). In Ohio,

> [i]n order to defeat a motion for summary judgment brought in a negligence action, it is incumbent upon the plaintiff to identify a duty owed to plaintiff by the defendant; further, there must be sufficient evidence, considered most favorably to the plaintiff, to allow reasonable minds to infer that the duty was breached, that the breach of that duty was the proximate cause of the plaintiff's injury and that the plaintiff was injured.

---

5. Summary judgment does not hinge on whether the 2015 risk assessment report was "available" to Defendant for purposes of § 4852d because Defendant's failure to provide the 2009 report is sufficient to demonstrate a violation for purposes of overcoming summary judgment.

8

*Livneh v. Village of Oak Harbor*, 2017 U.S. Dist. LEXIS 131551, *7 (N.D. Ohio) (internal quotations omitted). Defendant contends Plaintiffs are unable to establish a genuine issue of material fact regarding causation. (Doc. 97, at 9). Plaintiffs argue Wood's testimony is admissible for purpose of tying the medical diagnosis made by K.S.G.'s medical doctor to the environmental factors at the rental property. (Doc. 98, at 10). Plaintiffs argue Wood is not making a medical diagnosis at all, and the existence of lead poisoning, ADHD, and autism are not seriously in dispute. *Id.*

*Expert Testimony*

Federal Rule of Civil Procedure 702 governs the admissibility of expert testimony, stating, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* Further, "Federal Rule of Evidence 601 dictates that [Ohio's] witness competency rule governs the admissibility of medical expert testimony". *Legg v. Chopra*, 286 F.3d 286, 291 (6th Cir. 2002). Under Ohio Revised Code § 4723.151, "a nurse cannot testify as a medical expert on the issue of a medical diagnosis because that matter is outside her medical expertise." *Duchene v. Finley*, 2015-Ohio-387, ¶ 13 (Ohio Ct. App.). However, "[a] nurse may . . . render an expert opinion as to a medical issue about any matter in which she has expertise." *Id.* at ¶ 12.

In *Shilling v. Mobile Analytical Services, Inc.*, the Ohio Supreme Court held "[a] witness who is not a physician, but who qualifies as an expert under Evid.R. 702, may give evidence that would be relevant to diagnosis of a medical condition if the testimony is within the expertise of

9

the witness." 65 Ohio St. 3d 252, 252 (Ohio 1992). The issue before the *Shilling* court on appeal was the admissibility of plaintiff-appellant's expert testimony. *Id.* The plaintiff sought to prove "various personal injuries [were] caused by drinking water contaminated with gasoline during the period from October 1985 to December 1987." *Id.* at 253. The plaintiff was diagnosed with multiple sclerosis by a physician. *Id.* During the trial court proceeding plaintiff relied on the expert report of Raymond Singer, Ph.D., a neurotoxicologist and psychologist. *Id.*

Singer was a "fellow at the National Institute of Health and at the Mount Sinai School of Medicine, ha[d] won the NIH National Research Service Award, and ha[d] a long list of publications dealing with neurotoxicity and its effects." *Id.* at 254. He reviewed scientific literature and the available medical records, and concluded contaminated well water was a significant contributing factor in causing the plaintiff's brain damage. *Id.* at 253. The court held "Dr. Singer [was] qualified to testify that the ingestion of gasoline caused injury to the brain and nervous system . . . The fact that additional expert testimony may be required to establish a connection between such brain damage and all of the symptoms claimed by plaintiffs does not bar conclusions which do fall within Dr. Singer's expertise." *Id.* at 255. The court explained:

> The issue presented is not whether Dr. Singer's expertise allows him to testify that all of the symptoms exhibited by plaintiffs were caused by contaminated water. Those issues pertain to measurement of damage and are not before the court at this time.
>
> The pivotal point is this: If the plaintiffs suffered brain injury caused by the toxic poisoning, that is sufficient to overcome a motion for summary judgment. It at least entitles plaintiffs to nominal damages.

*Id.*; *see also O'Byrne v. Weyerhaeuser Co.*, 2022 U.S. Dist. LEXIS 164637, *38 (S.D. Ohio) (toxicologist and certified industrial hygienist without medical training qualified to testify as to whether levels of formaldehyde in homes were significant enough to cause the complained of health symptoms).

10

Plaintiff's expert, Marilynne R. Wood, has a Bachelor of Science in Nursing (BSN), a Master Degree in Nursing (MSN), and a Ph.D. in Health Education with cognates in Research and Methods. (Doc. 97, at 13). She has 55 years of nursing practice experience and is a professor at the University of Toledo College of Nursing. *Id.* She previously served as the principal investigator of research programs and grant awards to address public health issues impacting children and families. *Id.* Her primary research area is the detrimental effects of elevated lead blood levels, lead poisoning prevention, and safe home environments. *Id.* She has earned honors from universities including the University of Toledo for exemplary work directing the lead poisoning prevention program. *Id.* She has presented across the United States on issues of lead poisoning and prevention. *Id.* at 14. Wood has screened more than 1,000 children for lead poisoning. *Id.* These screenings include venous samples and reports confirming lead poisoning. *Id.*

Wood's expert report discusses scientific literature on lead exposure and the dangers to the human body; it specifically details the heightened risks to children. *Id.* at 15. At a high level of lead exposure, the risks include, in part, coma, death, mental disability, and behavioral disorders. *Id.* at 16. At lower levels, the risks include reduced intelligence quotient, behavioral changes, antisocial behavior, reduced educational attainment, anemia, renal impairment, immunotoxicity, and toxicity to reproductive organs. *Id.* Wood also opines "lead may play a causal role in autism" and provides scientific studies showing a correlation between lead exposure and ADHD. *Id.* at 18-19.

Wood's report provides an analysis of K.S.G.'s medical records. *Id.* at 20. Wood concludes from his blood level test and changes to his physical and behavioral development that K.S.G. suffered from lead poisoning. *Id.* at 22. Wood also states the scientific literature provides

11

statistical evidence tying K.S.G.'s decline in growth and development to lead poisoning. *Id.* Wood notes several studies substantiate Plaintiffs' claim that K.S.G.'s autism and ADHD are a result of lead exposure. *Id.*

The *Shilling* court established an expert who does not qualify as a "medical expert" is qualified under limited circumstances; *Shilling* specifically recognized a Ph.D.-holding toxicologist is "qualified to testify that the ingestion of gasoline caused injury to the brain and nervous system." *Shilling*, 65 Ohio St. 3d at 255 (noting "[d]octors often rely on lab studies performed by experts who are not licensed physicians. For instance, a doctor may give a medical diagnosis where the diagnosis relies upon the test results of a chemist or technician to determine blood-alcohol content."). Like the expert in *Shilling*, Plaintiffs' expert has demonstrated knowledge and training on lead poisoning and substantial experience testing and treating children. (Doc. 97, at 13-25). Therefore, Wood is qualified to testify lead poisoning caused injury to K.S.G. "The fact that additional expert testimony may be required to establish a connection between such [lead poisoning] and all of the symptoms claimed by plaintiffs does not bar conclusions which do fall within [Wood's] expertise." *Shilling*, 65 Ohio St. 3d at 255. The existence of lead poisoning is sufficient to overcome summary judgment because it "at least entitles plaintiffs to nominal damages", *id.*, even if K.S.G.'s autism and ADHD cannot be linked for lack of evidence. *See Wallace v. United States*, 335 F. Supp. 2d 252, 261 (D.R.I. 2004) (plaintiffs were "at least entitled to attempt to recover damages for the lead poisoning and its attendant treatment even if the behavioral and cognitive problems cannot be linked to the lead poisoning.").

However, Plaintiffs have not produced any expert testimony showing K.S.G.'s specific diagnoses – autism or ADHD – were caused by lead poisoning. *See* Doc. 98. Wood attests the

Case: 3:19-cv-02664-JRK Doc #: 100 Filed: 03/20/23 13 of 17. PageID #: 1143

scientific literature substantiates a connection, but she cannot opine to reasonable degree of medical certainty that all of K.S.G.'s symptoms were a result of lead poisoning. (Doc. 97, at 22). Such a medical diagnosis would be outside of her expertise, which is limited to identifying and treating lead poisoning. *Duchene*, 2015-Ohio-387 at ¶ 13 ("a nurse cannot testify as a medical expert on the issue of a medical diagnosis because that matter is outside her medical expertise"). In *Wallace v. United States*, a case out of the Rhode Island District Court considering lead poisoning under claims of negligence and 42 U.S.C. § 4852d, the court held:

> In response, the [p]laintiffs argue that there is overwhelming evidence that the Children suffered lead poisoning and were forced to undergo treatment for the elevated levels of lead in their blood. Accordingly, the [p]laintiffs contend that [defendant's] Motion for Summary Judgment should more properly be characterized as one for partial summary judgment because they are at least entitled to attempt to recover damages for the lead poisoning and its attendant treatment even if the behavioral and cognitive problems cannot be linked to the lead poisoning. This Court agrees. It is undisputed that the Children suffered lead poisoning after moving into the Property, and as a result of the lead poisoning, the Children had to undergo treatment for the exposure.

335 F. Supp. 2d 252, 261 (D.R.I. 2004). In accordance with the reasoning set forth in *Wallace*, because Plaintiffs have not provided any evidence raising a genuine issue of material fact that K.S.G.'s autism and ADHD were proximately caused by lead exposure, Defendant is entitled to partial summary judgment regarding Plaintiffs' negligence claims based on those conditions. Defendant's motion is denied in part because Plaintiffs have provided sufficient evidence to overcome summary judgment showing K.S.G.'s lead poisoning was proximately caused by lead exposure at the house. Therefore, Plaintiffs are "entitled to attempt to recover damages for the lead poisoning and its attendant treatment" as described above. *Id.* However, Plaintiffs are unable to recover damages related to "behavioral and cognitive problems" for lack of admissible evidence "link[ing the conditions] to the lead poisoning." *Id.*

13

Emotional Distress

Plaintiffs Ron and Allyse Goolsby also bring claims of intentional infliction of emotional distress (Doc. 1, at ¶¶ 131-37), negligent infliction of emotional distress (*id.* at ¶¶ 138-142), and loss of consortium (*id.* at ¶¶ 118-23). These claims are based on emotional distress associated with K.S.G.'s lead poisoning diagnosis. *Id.* Defendant moves for summary judgment and argues the emotional distress claims fail for lack of evidence showing serious emotional harm. (Doc. 97, at 9-10).

Defendant argues Plaintiffs are required to provide expert testimony to show serious emotional harm. *Id.* A plaintiff's testimony is insufficient to substantiate emotional distress claims and overcome summary judgment. *Bragg v. Madison*, 20 F. App'x 278, 286 (6th Cir. 2001) (citing *Dickerson v. Int'l United Auto Workers Union*, 648 N.E.2d 40, 50 (Ohio Ct. App. 1994)). "While Ohio does not require expert medical testimony to support an intentional infliction of emotional distress claim, a plaintiff must at least provide some evidence beyond his or her own testimony." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1111 (6th Cir. 2008).

In the context of negligent infliction of emotional distress in cases without a contemporaneous physical injury, "[a]ll that is required is some 'guarantee of genuineness' to support [a] claim for emotional distress. While expert medical testimony is helpful, it is not required to demonstrate emotional distress. A witness that is acquainted with the plaintiff may testify as to any marked changes in the emotional or habitual makeup that they discern in the plaintiff after the accident has occurred." *Al-Menhali v. Marriott Int'l*, 2019 U.S. Dist. LEXIS 241845, *34-35 (N.D. Ohio) (internal quotations and citations omitted).

14

In opposition to summary judgment, Plaintiffs direct this Court to their respective deposition testimony regarding serious emotional distress. (Doc. 98, at 13). Both Ron and Allyse testified extensively on the emotional distress they are enduring as a result of the events underlying the Complaint, including ongoing mental health treatment. (Allyse Goolsby Depo., at 96-98); (Ron Goolsby Depo., at 70-76). Plaintiffs did not submit expert testimony supporting their emotional distress claims. Nor did they submit an affidavit of an acquainted lay witness concerning marked changes to their emotional or habitual makeup. Because Plaintiffs' own testimony does not satisfy the "guarantee of genuineness" requirement under Ohio law, Defendant is entitled to summary judgment on Plaintiffs' claims for intentional infliction of emotional distress and negligent infliction of emotional distress. *Al-Menhali*, 2019 U.S. Dist. LEXIS 241845 at *34-35.

*Loss of Consortium*

In Ohio, "a parent may recover damages[] in a derivative action against a third-party tortfeasor who intentionally or negligently causes physical injury to the parent's minor child[] for loss of filial consortium." *Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St. 3d 244, 251 (Ohio 1993). "[F]ilial consortium is for the loss the *parent* suffers as a result of an injury to the child, which includes loss of services, society, companionship, comfort, love and solace." *Id.* at 253 (emphasis in original).

As discussed above, Plaintiffs raise a genuine issue of material fact on the negligence claim brought on behalf of K.S.G. Therefore, Plaintiffs Ron and Allyse Goolsby's loss of consortium claim, which is derivative of the negligence claim, overcomes summary judgment in accordance with that determination.

15

Remaining Claims

Defendant argues it is entitled to judgment on the remaining claims because (1) it is entitled to judgment on Plaintiffs' only federal claim (violations of the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. § 4852d) so this Court is divested of supplemental jurisdiction on all remaining state-law claims; or (2) Plaintiffs cannot prove damages "for lack of admissible evidence of medical causation". (Doc. 97, 10-11).

"In any civil action in which the district court has original jurisdiction, it also possesses supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Sexstella-Wright v. Sandusky City Sch. Dist. Bd. of Educ.*, 258 F. App'x 837, 839 (6th Cir. 2007) (internal quotation omitted). While "it is ordinarily prudent for a district court that dismisses a plaintiff's federal-law claims to decline to reach the plaintiff's state-law claims", a district court is not divested of jurisdiction as an operation of law when a federal claim is dismissed. *Id.* Nevertheless, the premise of Defendant's first argument fails because this Court has found Defendant is not entitled to summary judgment on the federal claim. This Court will exercise supplemental jurisdiction over the remaining state law claims.

Defendant's second argument fails for two reasons. First, this Court finds Plaintiffs raise a genuine issue of material fact on the negligence claim brought on behalf of K.S.G. Second, damages related to medical diagnosis are not the only relief sought in this matter. *See, e.g.*, Doc. 1, at ¶¶ 109-17, 163-86.

Defendant's motion is denied in part accordingly.

**CONCLUSION**

For the foregoing reasons, good cause appearing, it is

ORDERED that Best in Neighborhood LLC's Motion for Summary Judgment (Doc. 97) on K.S.G.'s negligence claim be, and the same hereby is, GRANTED IN PART and DENIED IN PART as set forth above; and it is

FURTHER ORDERED that Best in Neighborhood LLC's Motion for Summary Judgment (Doc. 97) on Ron Goolsby and Allyse Goolsby's claims for intentional infliction of emotional distress and negligent infliction of emotional distress, be and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Best in Neighborhood LLC's Motion for Summary Judgment (Doc. 97) on all other claims be, and the same hereby is, DENIED.

                                                   s/ *James R. Knepp II*
                                                   UNITED STATES DISTRICT JUDGE